**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Lowe,<br><br>        Plaintiff,<br><br>v.<br><br>Maxwell & Morgan PC,<br><br>        Defendant. | No. CV-15-02481-PHX-DLR<br><br>**ORDER** |

Plaintiff Michael Lowe alleges that Defendant Maxwell & Morgan PC ("M&M") violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, et seq., by attempting to recover post-judgement attorneys' fees and costs not authorized by Arizona law. At issue is Lowe's motion for class certification and M&M's related motion to strike. (Docs. 14, 49.) The motions are fully briefed and the Court heard oral argument on July 14, 2017. For the reasons below, both motions are denied.

## **BACKGROUND**

Lowe formerly owned and resided at real property governed by the Village of Copper Basin Community Association ("VCB"), to which he was required to pay periodic assessments. (Doc. 14 ¶¶ 20-28.) In 2012, VCB filed an action against Lowe in Apache Junction Justice Court after he failed to make those payments. (¶ 29.) M&M represented VCB before the Justice Court, and on January 31, 2014, successfully obtained a default judgment against Lowe in the amount of $6,349.69, plus interest (the

"Justice Court Judgment"). (¶¶ 30-31, 34.) This total included $4,546.65 in unpaid assessments, $1,267.50 in attorneys' fees, and $535.54 in costs. (¶ 34.) Additionally, the Justice Court Judgment awarded VCB "all costs and attorney fees incurred . . . after submission of this judgment for entry by the Court in collecting the amounts listed in this Judgment." (¶ 35.)

M&M later filed the Justice Court Judgment in Maricopa County Superior Court, presumably to domesticate it in Maricopa County for collection purposes (the "Superior Court Action"). (¶ 40.) On July 14, 2015, M&M simultaneously filed in the Superior Court Action an Application for Amount of Attorney Fees Incurred Post-Judgment, Pre-Garnishment ("Post-Judgment Fee Application") and an Application for Garnishment ("Garnishment Application"). (¶¶ 41, 46.) The Post-Judgment Fee Application requested an award of $1,175.52, representing $875 in post-judgment attorneys' fees and $300.52 in post-judgment costs. (¶ 46.) Although those amounts had not yet been approved by the Superior Court, the Garnishment Application incorporated them, stating:

> On the date of this Application, Judgment Debtors owe $7,910.75 outstanding balance on the judgment, including Judgment principal and interest of $6,735.23 and $1,175.52 in post-judgment, pre-garnishment attorney fees and costs, subject to Court approval, plus accruing amounts pursuant to the Judgment.

(¶ 41.) Consequently, the Superior Court issued a Writ of Garnishment and Summons ("Writ") stating that VCB had a $7,910.75 claim against Lowe, even though the full amount had not been approved by a court at the time the Writ issued. (¶¶ 42-43.) The Writ then was served on Lowe's employer. (¶ 52.)

On August 14, 2015, Lowe tendered $6,760 to M&M, representing the sum certain awarded by the Justice Court Judgment. (¶ 56.) M&M refused to accept the payment, however, because it did not also cover the post-judgment attorneys' fees and costs that M&M had requested and included in the Writ, but which had yet been approved by the Superior Court. (¶ 57.) The Superior Court later approved M&M's post-judgment attorneys' fees and costs on September 9, 2015. (Doc. 42 at 3.)

Lowe asserts that post-judgment attorneys' fees and costs incurred in collecting the underlying judgment are not authorized under Arizona law, and that M&M's method of garnishing those fees and costs in his case is part of a larger debt collection pattern. (Doc. 14 ¶¶ 33, 36, 38, 63.) He alleges that M&M utilizes a form template for all default and uncontested judgements it prepares and obtains against those similarly situated to him, and that this template routinely includes boilerplate language regarding otherwise impermissible post-judgment costs and fees. (¶¶ 33, 36, 63.) Lowe further claims that M&M regularly includes post-judgment fees and costs in its garnishment applications before those amounts have been approved by a court of competent jurisdiction. Consequently, the garnishment writs that M&M obtains are for amounts greater than the sums certain awarded in the underlying judgments. (¶¶ 38-39, 61-62.)

On December 7, 2015, Lowe initiated this action alleging that M&M's post-judgment litigation strategy violates the FDCPA. Lowe claims that he is but one among many who have been subject to M&M's post-judgment fee collection efforts, and therefore seeks to certify the following two classes:

> 1. All natural persons to whom, in the one year prior to December 7, 2015 through the date of class certification, Defendant garnished or attempted to garnish post-judgment fees and/or costs incurred in the collection of an underlying judgment.

> 2. All natural persons against whom, in the one year prior to December 7, 2015 through the date of class certification, Defendant requested or caused writs of garnishment to issue that included attorneys' fees and/or costs before those fees and/or costs were awarded by a court of competent jurisdiction.

(Doc. 42 at 1; Doc. 53 at 1.) M&M opposes class certification.

## **MOTION TO STRIKE**

Preliminarily, M&M moves to strike what it argues are new proposed class definitions introduced in Lowe's reply memorandum. (Doc. 49.) Motions to strike are generally disfavored and rarely granted. *XY Skin Care & Cosmetics, LLC v. Hugo Boss USA, Inc.*, No. CV-08-1467-PHX-ROS, 2009 WL 2382998, at *1 (D. Ariz. Aug. 4,

2009); *Ordahl v. U.S.*, 646 F. Supp. 4, 6 (D. Mont. 1985). Under Local Rule 7.2(m):

> a motion to strike may be filed only if it is authorized by statute or rule, such as Federal Rule of Civil Procedure 12(f), 26(g)(2), or 37(b)(2)(A)(iii), or if it seeks to strike any part of a filing or submission on the ground that it is prohibited (or not authorized) by a statute, rule, or court order.

In his motion for class certification, Lowe identifies the two putative classes as follows:

> 1. All natural persons to whom, in the one year prior to December 7, 2015, Defendant garnished or attempted to garnish post-judgment fees and/or costs incurred in the collection of an underlying judgment.
>
> 2. All natural persons against whom, in the one year prior to December 7, 2015, Defendant requested or caused writs of garnishment to issue that included attorneys' fees and/or costs before those fees and/or costs were awarded by a court of competent jurisdiction.

(Doc. 42 at 1.) M&M interpreted Lowe's class definitions as encompassing only those against whom garnishment writs issued between December 7, 2014 and December 6, 2015. (Doc. 45 at 7.) Lowe clarified in his reply, however, that his proposed class definitions cover those against whom garnishment writs issued between December 7, 2014 and the date of class certification. (Doc. 47 at 7-8.) In so doing, M&M argues that Lowe impermissibly proposed new class definitions in his reply brief.

M&M's motion to strike is denied for three reasons. First, Lowe assures the Court that omission of the phrase "through the date of class certification" from the putative class definitions in his initial motion was a clerical error. (Doc. 53 at 1-2.) Second, the putative class definitions contained in Lowe's reply memorandum are consistent with the definitions described in his complaint. (Doc. 14 ¶ 64.) Moreover, portions of Lowe's motion for class certification describe the applicable class period as extending beyond December 7, 2015. (Doc. 42 at 9.) M&M therefore cannot claim that it was surprised by the class definitions contained in Lowe's reply brief. Finally, M&M conceded at oral argument that it has not been prejudiced by the omission because it had notice of the relevant time frame from the complaint, the discovery completed thus far, and statements

- 4 -

made in the motion for class certification referencing a class size based on the extended period. Accordingly, the Court denies the M&M's motion to strike.

## **MOTION FOR CLASS CERTIFICATION**

**I. Legal Standard**

Class action certification is governed by Federal Rule of Civil Procedure 23. "For a named plaintiff to obtain class certification, the court must find: (1) numerosity of plaintiffs; (2) common questions of law or fact predominate; (3) the named plaintiff's claims and defenses are typical; and (4) the named plaintiff can adequately protect the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992); Fed. R. Civ. P. 23(a). If these prerequisites are met, the plaintiff must show that his case is appropriate for class-wide resolution because:

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

The party seeking class certification bears the burden of affirmatively demonstrating that all of Rule 23's requirements are met. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

**II. Discussion**

    **A. Numerosity**

- 5 -

Class certification is appropriate where "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). "Plaintiffs are not required to establish the precise number of class members, as long as common sense and reasonable inferences from the available facts show that the numerosity requirement is met." *Nghiem v. Dick's Sporting Goods, Inc.*, 318 F.R.D. 375, 380 (C.D. Cal. 2016) (internal quotation and citation omitted). Here, M&M has sought 618 writs of garnishment on behalf of its homeowner's association ("HOA") clients during the putative class period. At least forty of those writs included unadjudicated post-judgment attorneys' fees and costs. (Doc. 42 at 9.) The Court finds that Lowe has satisfied Rule 23's numerosity requirement for both putative classes. *See Del Valle v. Glob. Exch. Vacation Club*, No. SA CV 16-2149-DOC (JCGx), 2017 WL 433998, at *2 (C.D. Cal. Feb. 1, 2017) ("A proposed class of at least forty members presumptively satisfies the numerosity requirement.").

### B. Commonality

Rule 23(a)(2) next requires Lowe to demonstrate that "there are questions of law or fact common to the class." This determination will "inevitably touch upon the merits" of the underlying claim. *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1178 (9th Cir. 2015). Putative class members generally must "have suffered the same injury." *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157 (1982). Further, the plaintiff must demonstrate that "'a classwide proceeding will generate common answers apt to drive the resolution of the litigation.'" *Wal-Mart*, 564 U.S. at 350 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)). Slight differences among class members, however, will not destroy commonality. *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975).

Lowe's claims arise under the FDCPA, the purpose of which is to "protect consumers who have been victimized by unscrupulous debt collectors, regardless of whether a valid debt actually exists." *Baker v. G. C. Servs. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982). As relevant here, the FDCPA "applies to attorneys who regularly engage in

consumer-debt-collection activity, even when that activity consists of litigation." *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995). These activities could include "the filing of a complaint and other court documents." *Reyes v. Kenosian & Miele, LLP*, 619 F. Supp. 2d 796, 802 (N.D. Cal. 2008).

Lowe alleges that M&M's litigation tactics violate the FDCPA because its court filings include misleading representations about the nature of Lowe's debt, and because M&M's post-judgment fee and cost collection tactics are "unfair or unconscionable." *See* 15 U.S.C. §§ 1692(e)-(f). He contends that "[t]here are two narrow legal issues that comprise the proposed classes here: (1) whether [M&M] garnished or attempted to garnish improper post-judgment attorney fees and costs; and (2) if [M&M] did such, whether it did it prior to the entry of judgment on such attorney fees and costs." (Doc. 47 at 8.) The Court agrees both that these questions are central to Lowe's claim and common among the putative class members, and that a classwide proceeding will generate common answers that advance the litigation.

## C. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."

> The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class. Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought. The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.

*Hanon*, 976 F.2d at 508 (internal quotations and citations omitted).

Here, as is often the case, the typicality and commonality requirements tend to merge. *See Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). Lowe has demonstrated that he and the putative class members have the same or similar injury resulting from substantially the same conduct by M&M. Defendants argue, however, that Lowe's claim is atypical because it is time-barred.

"Several courts have held that class certification is inappropriate when a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Hanon*, 976 F.2d at 508. When a defendant opposes class certification based on a legal defense unique to the putative class representative "the district court cannot assume its validity but should make a threshold determination on the legal merits." *Edwards*, 798 F.3d at 1184. If the defense is invalid as a matter of law, it "will not give rise to individual issues and thus cannot be a valid basis for denying class certification." *Id.*

FDCPA claims must be brought within one year of the alleged violation. 15 U.S.C. § 1692k(d). M&M contends that entry of the Justice Court Judgment on January 31, 2014, triggered the limitations period, and that Lowe's claim is time-barred because he did not file this lawsuit until December 2015. Lowe responds that his FDCPA claim accrued on July 14, 2015, when M&M initiated the Superior Court Action. Lowe's approach is better.

Lowe accuses M&M of misrepresenting the status of his debt by applying for a garnishment writ that included post-judgment attorneys' fees and costs that had not yet been approved by a court of competent jurisdiction. He also contends that post-judgment fees and costs incurred in the collection of an underlying judgment are not awardable under Arizona law and, therefore, M&M engaged in unfair and unconscionable debt collections practices by routinely garnishing or attempting to garnish amounts to which it was not entitled. These actions all occurred in the context of the Superior Court Action, which was not filed until July 14, 2015. Indeed, although the Justice Court Judgment included language awarding M&M post-judgment fees and costs, M&M did not assign a sum certain to that award until it initiated the Superior Court Action and filed its Post-Judgment Fee Application. Lowe would not have known on January 31, 2014 that M&M would pursue the specific post-judgment fees and costs at issue here, or do so in the manner alleged. *See Blakemore v. Pekay*, 895 F. Supp. 972, 982-83 (N.D. Ill. 1995) (concluding that limitations period ran from date of the garnishment action, rather than

the date of the underlying debt collection action); *see also Fox v. Citicorp Credit Serv., Inc.*, 15 F.3d 1507, 1515 (9th Cir. 1994) (holding that an application for writ of garnishment is a "legal action on a debt" for purposes of the FDCPA). In light of the weakness of M&M's statute of limitations defense against Lowe's individual clams, the Court concludes that the defense will not be "a major focus of the litigation" and therefore does not defeat typicality. *See Hanon*, 976 F.2d at 508-09.

### D. Adequacy

"The final hurdle interposed by Rule 23(a) is that 'the representative parties will fairly and adequately protect the interests of the class.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1988) (quoting Fed. R. Civ. P. 23(a)(4)). The Court assesses the adequacy of representation by answering two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.*

M&M does not argue that Lowe or his counsel have conflicts of interest with other putative class members, or that they will not prosecute the action vigorously. Instead, M&M contends that Lowe cannot adequately protect the interests of the putative classes because he does not understand his claims and is ignorant of the status of his case, and because he has ceded all control over this case to his attorneys. (Doc. 45 at 14.) This, however, is not the inquiry under *Hanlon*.[1]

The Courts also must scrutinize the adequacy of proposed class counsel. In so doing, the Court considers "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action" and "counsel's knowledge of the

---

[1] Many of the cased relied upon by M&M are distinguishable. For example, in *Griffin v. GK Intelligent Sys., Inc.*, 196 F.R.D. 298, 302 (S.D. Tex. 2000), the court found the putative class representatives to be inadequate because one named plaintiff had a conflict and the other knew nothing about the factual underpinnings of the case. Likewise, in *Levine v. Berg*, 79 F.R.D. 95, 98 (S.D.N.Y. 1978), the court found that the plaintiff did not understand the nature of the injury that she had purportedly suffered. Here, though Lowe might not be well-versed in the procedural nuances of his case, he has no conflicts and appears to understand the nature of the injury he allegedly suffered.

applicable law." Fed. R. Civ. P. 23(g). Counsel's declaration (Doc. 42-1 at 13-15) demonstrates both these factors to the Court's satisfaction. Counsel previously worked in the Class Action Litigation section of a large law firm. (¶ 5.) Counsel also has extensive experience litigating FDCPA claims and representing homeowners and consumers in connection with HOA matters. (¶¶ 3, 6-7.) The Court therefore finds that Lowe and his counsel will fairly and adequately protect the interests of the putative classes.

### E. Situating the Case Within Rule 23(b)

Having found that Lowe's putative classes satisfy the prerequisites of Rule 23(a), the Court now must consider whether this matter is suitable for classwide resolution under Rule 23(b). Lowe contends that this matter is appropriate for class certification under Rules 23(b)(1)(A) and (b)(3).[2] The Court addresses each in turn.

#### 1. Rule 23(b)(1)(A)

Class certification is appropriate under Rule 23(b)(1)(A) if "prosecuting separate actions by . . . individual class members would create a risk of . . . inconsistent or varying adjudications . . . that would establish incompatible standards of conduct" for the defendant. "Incompatible standards of conduct" means that "different results in separate actions would impair the opposing party's ability to pursue a uniform continuing course of conduct." 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1773 at 429, 431 (2d ed. 1986). The Rule requires more, however, than "a risk that separate judgments would oblige the opposing party to pay damages to some class members but not to others or to pay them different amounts." *Id*. "Certification under Rule 23(b)(1)(A) is therefore not appropriate in an action for

---

[2] In his initial motion, Lowe also cited Rule 23(b)(1)(B) as a basis for class certification. (Doc. 42 at 15-16.) This subsection applies when prosecuting separate actions would, as a practical matter, "be dispositive of the interests of other members . . . or would substantially impair or impede their ability to protect their interests." Lowe, however, merely states that certification is necessary "to prevent any adjudication of [Lowe's] claims that could impair or impede other putative class members from pursuing their own claims," and fails to explain why this is so. Further, Lowe appears to have abandoned reliance on Rule 23(b)(1)(B) in his reply memorandum, which does not mention this subsection. Accordingly, the Court does not address Rule 23(b)(1)(B) because, to the extent Lowe has not abandoned his reliance upon it, he has not adequately developed those arguments in his briefs.

damages." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1193 (9th Cir. 2001).

Lowe's complaint does not seek declaratory or injunctive relief. Instead, he seeks damages for the alleged FDCPA violations. That litigation of separate actions might obligate M&M to pay damages to some plaintiffs but not to others does not mean that prosecuting separate actions would establish incompatible standards of conduct within the meaning of Rule 23(b)(1)(A). The Court finds that class certification is not appropriate under this subsection.

**2. Rule 23(b)(3)**

To situate a case under Rule 23(b)(3), the plaintiff must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The first criterion—predominance of common questions—"is far more demanding" than the showing required for commonality. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 624 (1997). The focus is "on the relationship between the common and individual issues." *Hanlon*, 150 F.3d at 1022. The second criterion—superiority—"requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Id.* at 1023. "Where classwide resolution of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Having carefully considered the parties' arguments, the Court finds that neither of the Rule 23(b)(3) criteria are met here.

First, the Court finds that common issues do not predominate over individualized inquiries. For example, the Court likely will need to conduct individualized investigations in order to determine whether each putative class member has incurred a qualifying debt. Under the FDCPA, a qualifying debt must have been incurred "primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). This finding requires a case-by-case evaluation of the transaction as a whole in order to

determine whether it "was primarily consumer or commercial in nature." *Bloom v. I.C. Sys., Inc.*, 972 F.2d 1067, 1068 (9th Cir. 1992) (internal quotation and citation omitted). Although homeowners' association fees can be qualifying debts if incurred by someone who uses the property for personal, family, or household purposes, those same fees would not qualify if incurred by a landlord utilizing the property for commercial purposes. *See Caron v. Charles E. Maxwell, P.C.*, 48 F. Supp. 2d 932, 934 (D. Ariz. 1999); *Otomo v. Nev. Ass'n Servs., Inc.*, No. 2:10-CV-2199 JCM GWF, 2013 WL 1249598, at *8 (D. Nev. Mar. 25, 2013); *Beeks v. ALS Lien Servs.*, No. CV 12-2411 FMO (PJWx), 2014 WL 7785745, at *4-6 (C.D. Cal. Feb. 18, 2014). The Court therefore would need to examine the circumstances surrounding each putative class member's home purchase to determine the purpose of the transaction.

Lowe argues that these inquiries will not require extensive investigation because affidavits of value provide conclusive proof of the home purchaser's intent. The Court disagrees. Lowe's suggestion that affidavits of value are conclusive runs counter to the Ninth Circuit's admonition to elevate "substance over form" and "look to the substance of the transaction . . . rather than the form alone" when determining the purpose for which a debt was incurred. *Slenk v. Transworld Sys., Inc.*, 236 F.3d 1072, 1075 (9th Cir. 2001) (internal quotations and citation omitted). Moreover, M&M has identified several instances in which affidavits for value did not accurately reflect the purpose for which the property was purchased. (*See* Doc. 45-2 ¶¶ 3-4.) It does not appear, then, that affidavits of value are always reliable indicators of the property owner's intent.

Further, resolution of the putative class members' claims likely will require the Court to conduct individualized inquiries into the state court records for each putative class member to determine such matters as: (1) whether the post-judgment fee request was material to the class member; (2) whether M&M had a contractual or state law basis for seeking the fees; and (3) whether the parties litigated the fee issues such that challenging the request in this Court would constitute an improper collateral attack on a state court judgment. Indeed, M&M identifies cases in which garnishment writs were

issues after the property owners stipulated that M&M's client was entitled to post-judgment fees and costs. (*Id.* ¶ 5.) Additionally, there is no suggestion that M&M's clients utilize a common HOA agreement. The Court likely will need to examine the governing documents for each HOA client to fairly address whether post-judgment fees and costs were authorized by contract.

The Court also finds that a class action is not the superior method of resolving these claims. The plethora of individualized investigations likely will render classwide resolution unmanageable. Moreover, M&M has identified putative class members who filed bankruptcy petitions after being served with garnishment writs, but who did not schedule any claim against M&M. (*Id.* ¶¶ 6-7.) These property owners and others like them are therefore unable to be plaintiffs in this case. *See Cusano v. Klein*, 264 F.3d 936, 945-46 (9th Cir. 2001). Instead, any potential claims against M&M would belong to the bankruptcy estates, which would need permission from the bankruptcy court to pursue them here. *Id.* at 943, 945-46. Given these complexities, the Court finds that a class action is not the most efficient way to resolve these claims, and that class certification might prevent M&M from fully and fairly litigating unique defenses.

**III. Conclusion**

For the foregoing reasons, the Court finds that that both putative classes satisfy the four Rule 23(a) prerequisites for class certification, but that neither are appropriate for classwide resolution under Rule 23(b).

**IT IS ORDERED** that Lowe's motion for class certification (Doc. 42) is **DENIED** and M&M's motion to strike (Doc. 49) is **DENIED**.

Dated this 19th day of September, 2017.

Douglas L. Rayes
United States District Judge